Haynes, J.
A petition was filed by Joseph L. Yost, Teasurer, for the enforcement of certain taxes against lot 224, Port Lawrence Division of the city'of Toledo, amounting in all to $3221,88.
An answer and cross-petition is filed by the Brewing Company, in which they set up a variety of reasons why the plaintiff should not have judgmenUfor that amount of taxes, and setting up that a very large proportion of these taxes is illegal.
Some of these defenses are admitted to be good defenses, by the plaintiff, and as to others the facts are denid; and, where the facts are not denied, the legal conclusions which are claimed by the plaintiff are denied.
The case is an important one, and in the condition in which the statutes are, in connection — perhaps--with the method of doing business, it is difficult to arrive at any very correct conclusion in regard to the matter. We have spent a good deal of time on the discussion of the question, and have arrived at certain conclusions; but at the same time, the case is one of such importance that it ought to go to the supreme court, and probably will go there, and perhaps it would be sufficient to aimply announce our judgment. However, it may be due to counsel to state, very briefly, the conclusions at which we have arrived on some of the leading questions involved.
The principal question arises from the state of facts which is set up in the reply; and I will read what is there, very briefly:
“Further replying to the matter in the fourth paragraph of defendant’s cross-petition contained, this defendant says that a new building was erpcted and built upon said lot 224 on the day preceding the second Monday in April, 1898, and that said assessor failed to return said building for taxation to she auditor of Lucas county, Ohio.”
That is, that year.
“That on the first day of August, 1898, the Board of Equalization,after giving due notioe to the Maumee Brewing Company, the then owners of said lot, passed a resolution increasing the valuation of said lot by adding $40,000 thereto on account of the addition of said building, of which *28 due notice was given tc.the said Maumee Brewing Company, and that said Board of Equalization, in their resolution,did not describe the lot, but added the valuation to the Maumee Brewing Company on aocount of said building.
“That thereafter, but prior to the 8th day of September, 1898, the county auditor entered the name of the Maumee Brewing Company in a book which he keeps for the purpose of entering added buildings, and opposite the said name entered the words, ‘Lots 225 and 226 Port Lawrence Division1, together with a notation of said addition of $40,000 on account of said building.
“That afterwards,about the 1st day of October, 1898, said auditor entered said lots 225 and 226 in Port Lawrence Division of Toledo, Lucas county, Ohio, upon the tax duplicate of 1898, with the added valuation,and at the same time entered the said lot 224 upon said duplicate at the old valuation of $2400.
“That in the month of January, 1899, the said auditor for the first time,discovered that an error had been made in entering said increased valuation against said lots 225 and 226, and thereupon proceeded to make the correction by reducing the said valuation upon said lots 225 and 226, and added it to lot 224, where it properly belonged.”
The Brewing Company was organized and received a deed for this property. It says, paragraph five:
“Defendant further says that by a deed duly executed on the third day of September, 1898, and filed for record on the eighth day of September, 1898, said lot 224 was conveyed to this defendant, who then and not before became the owner thereof.”
It is claimed that the auditor had po authority to enter this $40,000 upon the tax duplicate after the Sd of September, 1898, for the reason that this property hud been transferred at that time, as stated in the answer, to the defendant, the Brewing Company; and it is under section 2808 of the statutes; and it Í9 upon the proper construction of that statute under the facts of tho oase, that the difficulties arise in this oasé. “In all cases where any county auditor shall discover, or have his attention called to the fact, that any assessor in any previous year shall have omitted to return, or shall in any future year omit to return any lands, town lots, or any improvements,structures cr fixtures thereon, subject to taxation, situated within his county.” You will observe the statement that if the auditor shall discover, or have his attention oalled to the fact that any assessor in *29 auy previous year shall have omitted to return — which is very easy to be done, jf he discovers it; but it'proceeds to say ' or shall in auy future year omit to return any lands” &o “subject to taxation” — 'I suppose the legislature in that act had in mind that if he discovered anything that was prior to the time that he made the discovery, or that if in any year thereafter he made the discovery of any such omission Then the statute provides: “or if any such property has escaped taxation -bv reason of any error ot said auditor, it shall be the duty of said auditor to ascertain the value thereof for taxation as near as may be, and to enter said lands, town lots or improvements, upon the duplicate of the county then in the hands of the county treasurer of suóh county.” Now, that seems to be plain sailing: when he discovers this he is to enter it upon the duplicate cf the county in the hands of the treasurer of such county, but the statute further says. “And to add to the taxes of the current year the simple taxes of each and every preceding year in which such property shall have escaped taxation, as far back as the next preceding decennial appraisement and equalization of real estate in his county, unless in the meantime suoh property shall have changed ownership, in which case only th9 taxes chargeable since the last change of ownership'shall h6 added, or the owner of such prope ty may, if he desires, pay the amount of such taxes into the county treasury, on the order of said auditor.”
Now, it seems to us that the reading of that statute is this: if, upon any year, the auditor discovers that in that year there has been an omission, on account of improvements, from the duplicate, that he may add that improvement upon the duplicate. That is the plain reading of the statute. “It shall be the duty of said auditor to ascertain the value thereof, for taxation as near as may be, and to-enter said lands, town lots or improvements upon the duplicate of the county.” In that state of facts we can see that the amount goes upon the duplicate and is taxed for the current taxes of that year.
But there is another condition that may arise: and that is that this omission had occurred two or three years before, and that therefore there had been back taxes, or the taxes cf prior vears which had not been paid, or had not been assessed, which ought to have been assessed upon the property; and thereupon the statute,provides that he shall have authority to add to the taxes of the current year. Now that addition is the addition of the back taxes to the cur *30 rent taxes — “to add to the taxes of the current year the simple taxes of each and every preceding year” — that is, taxes without penalty, as we understand — “in which such property shall have escaped taxation, as far back as the next preceding decennial appraisement and equalization of real estate in his oounty, unless in the meantime such property shall have changed ownership, in which case only the taxes chargeable since the last change of ownership shall be added.” Added to what? Added to the current tax of the current year upon the property.
We have read all the authorities whioh have been cited a ad have spent a great deal of time in the discussion of this question, and we confess that there are a great many doubts and uncertainties about it; but it seems to us that the better opinion is — and the more proper construction — to hold that when the auditor discovered that this assessment on this property and improvement had not been made by the assessor of that year, that; he then should have placed the same upon the duplicate and added the taxes. He made that discovery in the summer, and attempted in October of that year to oure it, or to correct the omission; but by another mistake of some one in the office, the amount was placed upon the property of a neighbor, and not upon this property. The statute provides that “it shall be the duty of said auditor to ascertain the value thereof for taxation, as near as may be, and to enter said lands, town lots or improvements, upon the duplicate of the oounty, then in the hands of the county treasurer of such county.” The question has arisen as to how long and during what time this entry may be made upon this duplicate. And there comes up the question of the taxes of the current year to whioh it is said the addition may be made. It has been suggested that the year would extend from April to April, the time when the taxes beoome a lien upon the real estate. It has been discussed between us whether or not it is intended to mean the ourrent year A. D.; but the statute seems to make provision for making this correction upon the duplicate in the hands of the county treasurer. Originally, as we all know, the taxes in this part of the country for any particular year were, as they are now, lovied some time about the month of June — about the 1st of June — I think in some oases the provision is that the levy shall be made at that time, so far as the county commissioners are concerned, and presented to the commissioners by that time by other officers who are authorized to make the levy. That levy *31 having been made, the property is placed upon the duplicate, and the proper levy of the taxes upon each lot is made. The duplicate is to be placed in the hands of the treasurer by the 20th of Ootober, and the taxes were collectible and payable on or before the 20th of December following, making the whole business come within the year. So far as this county is concerned, the duplicate gets into the hands of the officer by the 1st of November. The general statute provides that a party may have a choice, and instead of. paying his whole tax on or before the 20th of December, may have until the June following to pay one-half, and pror vision is made for the return of the duplicate on or before the 20th of January to the auditor,and then for the returning' of it to the treasurer on or before the 20th of April following, and give the parties until the 20th of June following in. which to pay the taxes of the year for which the taxes were collected, one-half of them being collected really in the year following the principal levy of the taxes.
The objeot and purpose of this statute is to put upon the duplicate the property of a particular year — to put upon the •duplicate the property which the auditor discovers has been-•omitted for that year, and we think the true construction .should be that he should have an opportunity of placing it upon the duplicate at any time during the time in whioh the duplicate is in the hands of the treasurer for the collection of the taxes of that year, and without reference to whether it is the first of April or whether it is for the year .according to the ordinary computation of time; and we~ think, therefore, that this auditor had the authority to •place this omission upon this lob 224 at any time during the •time that the duplicate was in the hands of the treasurer for the collection cf the taxes of 1898; and this he did; and-there being no back taxes — the omission having occurred in 1898 — this whole olause with reference to back taxes and the transfer of property, etc, has no application: that is to say —a man who buys property in any particular year takes, upon himself the liability to have the property assessed for the taxes of that year, and to have amendments made in the same manner for that ourrent year, if omissions or errors are found to exist.
In addition to the tax of which we have been speaking, there was levied in the county a tax for the purpose of paying, in some part, for stone roads, under what are called the Stone Road Lawá of this state; and there is a law in regard to st^ne reads in this county whioh is different fr.om- *32 that of any other oounty in the state, and it is olaimed that that provision of the statute is unoonstitutionai.
That question was before this oourt a good many years ago in the case of William Taylor v. The Commissioners of Lucas County, being case No. 225 of this court, and .was heard, and this oourt held that the law was constitutional; proceeding, as I remember it, upon the theory that the matter was rather of a local nature, and therefore did not come within the prohibition of the constitution that laws of a general nature must have a uniform application in the state. The case was taken to the supreme court, and the judgment of this court was affirmed. It is said that it might have been affirmed upon some other question as, for instance, that the tax being less than it would be under the other statutes, that ■ therefore the plaintiff was benefited rather than injured by the statute, and hence had no equity, and therefore the petition should be dismissed. I hardly think the supreme court would pass upon the question in that form, and I do' not think it necessarily follows that they did pass upon it in that form. At any rate, the court affirmed the judgment, and that question was in it, and we think we ought not to hold that that statute is unconstitutional. I will say frankly that I think, if the case goes to the supreme court, that it will overrule its former decision made in this Taylor case, but we prefer that they should do it rather than do it ourselves.
There is another provision of the statute, found in seotion 2828, which provides for the levying of taxes by the county commissioners for oounty purposes generally and largely. .The statute is a very long one. It provides for a limitation of the amount which the commissioners may annually levy, and where the appraised value of the taxable property does not exceed three million dollars, the amount is limited to five mills, and where the amount exceeds three millions and does not exceed five millions of dollars, it is limited to three and five-tenths, and so on up to above seventy million dollars, and at some time in the history of this world the authorities at Columbus — perhaps upon the instigation of the commissioners of this oounty, or somebody perhaps interested in the welfare of Lucas county — made a prohibition that in Lucas county limits the sum to be levied to five mills: before it had been 1 1-10 mill, and since that time the taxes have increased. Now it is said that that amendment of the statute was unconstitutional, and that for the reason that the subject of taxation is one of a gen *33 eral nature throughout the state, and one that all parties are interested in, and that any law that affects the subject of taxation should be a law of general and universal application throughout the state. We are not so clear about that. The statute provides here for a classification of all the counties, that is to say, it is a classification by the amount of taxable proporty upon the duplicate. In counties where there is a certain amount of taxable property the rates may be so much, and so on through, and if uniformity is required,, it seems to us, that uniformity should apply in a matter of that kind as well as anywhere else.
Charles E. Sumner, Pros. Atty., for Plaintiff in Error.
Swayne, Rayes & Tyler, for Defendant in Error.-
The supreme court have held, in a oase in 60 Ohio St., State v. Buckley, p. 273, that classification in regard to counties does not properly exist, it is only as to municipal corporations that they allow it — and I think they are sorry that they ever allowed that. We have very serious doubt whether the contention of oounsel whioh has been made in this case is true: that this particular portion of this aot is constitutional. We think this oourt ought not-to declare a law unconstitutional unless it most clearly appears to be so, or unless it has been adjudged to beso, either diieotly or indirectly, by the supreme court of the state of Ohio, and we think this question is a matter of very great importance; it is of very great importance to the county, and if it is unconstitutional it is very far reaohing, and we feel that we ought not to declare the law unconstitutional with the present views we have in relation to it, and therefore, we shall hold that that act is constitutional until further instructed by the supreme court of the state.
These are the leading questions whioh are made in the case, and we have given them a very careful examination without coming to as clear a conclusion in regard to them as we would like to come to in the discussion of a legal question, but judgment may be rendered in the case in accordance with this decision.
The demurrer will be sustained, and judgment entered upon the demurrer. That raises all the questions.